UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **SHARYL THOMPSON ATTKISSON, et al.,**<br><br>    Plaintiffs,<br><br>v.<br><br>**ERIC HOLDER, et al.,**<br><br>    Defendants. | Civil Action No. 1:17-cv-364 (LMB/JFA) |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE FEDERAL DEFENDANTS' MOTIONS TO DISMISS

The Government is correct when they say this case has been wrought with delay. But they miss the mark when they try to blame the Plaintiffs for those delays. During the 2.2 years which passed while this case was pending in the Federal District Court for the District of Columbia ("D.D.C."), the Government received 372 days of extensions[1]. By contrast, Plaintiffs requested a total of 72 days of extra time,[2] and when they did try and force the issue, were confronted with 790 total days passing while the various motions were ripe for decision.[3] Plaintiffs attempted to get some discovery into the persons who infiltrated their computers, but despite requesting discovery on at least six different occasions by four different methods, the Government has

---

[1] Bivens case: Docket Nos. 31 (30 days), 32 (7 days), 37 (23 days), 42 (14 days), 43 (7 days), 44 (21 days), 54 (18 days), 55 (18 days), 56 (4 days), 57 (4 days), 58 (3 days), 59 (3 days), and 78 (30 days). FTCA case: Docket Nos. 12 (43 days), 14 (15 days), 21 (32 days), 23 (60 days), and 27 (14 days).
[2] Bivens case: Docket Nos. 12 (3 days), 37 (34 days), 48 (8 days), 75-76 (14 days). FTCA case: Docket No. 5 (13 days).
[3] Bivens case: Docket Nos. 21 (71 days), 40 (219 days), 47 (181 days), 67 (202 days), 74 (117 days).

1

explicitly stated that they will resist any and all discovery into this matter, producing no documents and making available a single witness who had almost no information about the identified topics. There is blame to be laid for the "serpentine procedural history," but it does not lie with Plaintiffs. The Government's continued stonewalling should not be rewarded with a free pass to avoid the application of a little sunshine to its multi-year illegal surveillance and cyber-stalking of an American citizen, a journalist, and her family.

## I.  PROCEDURAL TIMELINE

<u>The *Bivens* Case</u>, 1:15-cv-238 (D.D.C.)

December 26, 2014 – The initial Complaint was filed in Superior Court for the District of Columbia.

Feb. 23, 2015 – The Government removed the case to the D.D.C.

Feb. 23, 2015 – Plaintiffs filed a motion for expedited discovery as to the identity of the John Doe defendants [Dkt. 5], which the Government opposed [Dkt. 11] and to which the Plaintiffs replied. [Dkt. 14]

March 17, 2015 – The Court denied Plaintiffs' motion as premature.

March 20, 2015 – Having filed their proofs of service, Plaintiffs filed a renewed motion for expedited discovery, [Dkt. 21] which the Government again opposed. [Dkt. 22] Plaintiffs filed their reply on April 23, 2015 [Dkt. 28], and the motion was ripe for decision. The motion was pending for 71 days before it was denied. [Dkt. 34]

April 30, 2015 – Plaintiffs filed an Amended Complaint. The Government filed for extensions of time to respond on May 18 [Dkt. 31], June 15 [Dkt. 32], and June 23 [Dkt. 33] before finally moving to dismiss on July 7. The parties agreed to a briefing schedule, and the motion became ripe on September 24, 2015.

September 1, 2015 – Plaintiffs served a Notice of Deposition and subpoena duces tecum on the United States Postal Service to determine the user of the IP address used to access Plaintiffs' computers. The deposition was noticed for Sept. 15, but no deponent from the USPS attended, and no notice to quash or for protective order was filed.

October 9, 2015 – Plaintiffs filed a motion to compel [Dkt. 40] following communication with the Government's attorneys (which meet and confer request was ignored for 8 days, then unilaterally rescheduled by the Government), in which the Government expressed that it would continue to object to any and all discovery. The USPS filed for a 37 day extension to respond [Dkt. 42], which the Court pared down to 14 days. The USPS then moved for additional extensions on Nov. 5 [Dkt. 43] and Nov. 14 [Dkt. 44], before finally opposing the motion on Dec. 7 [Dkt. 46]. Plaintiffs replied on Dec. 22, 2015 [Dkt. 50], and the motion became ripe for decision. Plaintiffs' Motion to Compel was pending until July 28 when the case was consolidated.

Dec. 7, 2015 – When the USPS finally filed its opposition to the Motion to Compel, it also filed a motion to quash the subpoena and notice of deposition (the ones due back on September 15). [Dkt. 54] Plaintiffs filed their opposition on Dec. 22 [Dkt. 50], after which the USPS sought an extension on its reply. [Dkt. 54]

December 31, 2015 – Though not a party to this specific action, the United States filed two Statements of Interest [Dkts. 45, 49], to which Plaintiffs responded on Dec. 22 [Dkt. 51, 52]. The Government then sought four extensions of time to file their reply [Dkts. 55, 56, 57, 59] before finally replying on January 29, 2016.

February 10, 2016 – Plaintiffs filed a Motion for Hearing on their Motion to Compel (filed Oct. 9, 2015), the USPS' Motion to Quash (filed Dec. 7), and the Government's two Statements of Interest (filed Dec. 3 and Dec. 21).

July 28, 2016 – The Court denied all pending motions without prejudice, and ordered that the FTCA case be consolidated into the Bivens case.

<u>The FTCA case, 1:15-cv-1437 (D.D.C.)</u>

December 26, 2014 – The Plaintiffs claims under the FTCA were submitted for administrative consideration, as required by statute.

September 2, 2015 – When no response was received from the Government, Plaintiffs filed suit.

March 1, 2016 – After the Defendants were served, the Government moved for extensions of time of 45 days [Dkt. 12], 15 days [Dkt. 14], 30 days [Dkt. 18], 32 days [Dkt. 21], and 60 days [Dkt. 23]. Defendants actually went into default on April 27, after which they informed Plaintiffs and the Court that the AUSA on the file was in a car accident on May 3.

July 28, 2016 – The Court ordered that the FTCA case be consolidated into the Bivens case.

<u>Consolidated Case, 1:15-cv-238 (D.D.C.)</u>

August 4, 2016 – When the Court consolidated the two cases, it invited a motion for reconsideration of the denied motions. Plaintiffs accordingly filed a motion for reconsideration on their motion to compel. [Dkt. 67]

August 26, 2016 – Defendants filed a motion to dismiss the consolidated case. [Dkt. 72] After an extension of 11 days, Plaintiffs filed their opposition on Oct. 7 [Dkt. 77], after which Defendants requested a 30 day extension to file their reply on Nov. 17 [Dkts. 78, 79]

March 19, 2017 – After 122 days, the D.D.C. transferred the consolidated case to this Court.

## II. SUBSTANTIVE PROCEDURAL ANALYSIS

Curiously, while the Federal Defendants devote 9 pages of their brief insinuating, implying, and at least once outright stating that Plaintiffs are responsible for the labyrinthine history of this case, they somehow fail to mention how their own actions were primarily responsible. As the above timeline demonstrates, prior to transfer to this Court the Government was granted over 1 year of extensions to the Plaintiffs 2.5 months. Since the Plaintiffs first requested expedited discovery on February 23, 2015, and despite the Plaintiffs having issued a number of subpoenas and notices of deposition, the Government has produced exactly 0 pages of discovery and made available only a single deponent. Despite this stonewalling, which now stretches on to 3 years, the Government has the audacity to blame the Plaintiffs for having done "little more than repeat essentially the same allegations…" [Dkt. 202, pg. 2]

However, as the above timeline demonstrates, at this point Plaintiffs are before the Court with the cleanest hands. Plaintiffs have provided this Court with credible allegations and evidence that the Federal Defendants initiated a substantial multi-year cyber-stalking and electronic intrusion campaign into the computers, mobile phones, and home network, of a reporter and her family because they didn't like how she was reporting stories about their implementation of the Obama Administration's policies that cast them in a negative light. Plaintiffs have done so despite having been able to take only a single deposition in 3 years, which led to the identification of the intrusion as stemming from Federal Agents based in, among other places, the FBI's Operations Technology Division ("OTD") at Quantico, Virginia. It is hard to imagine how Plaintiffs could have done more to demonstrate the seriousness of the matter to this Court when based almost

entirely on their own investigation and without access to any of the information possessed by the federal government.

And though the Federal Defendants harp on the fact that there have been five different complaints filed, they ignore the fact that the FTCA requires a claim be submitted administratively before suit can be filed (Complaint #2), and gloss over the fact that this Court ordered the filing of the Consolidated Complaint and the amendment thereto which is the subject of this motion. Plaintiffs first filed suit in December 2014, and at the same time submitted their claims under the FTCA for administrative consideration, as is required by the FTCA. After the government took no action at all on those FTCA claims, Plaintiffs filed a separate lawsuit after consultation with certain of the Federal Defendants in which those Defendants expressed no preference between a separate filing and an amendment to the complaint then pending.

After the cases were consolidated (over the defendants' objections) and transferred to this Court (at the defendants' request), this Court directed the Plaintiffs to file a consolidated complaint. Plaintiffs did so, inadvertently omitting the United States as a party. Based on the Court's ruling that this was the equivalent of Plaintiffs' having voluntarily dismissed the United States,[4] Plaintiffs sought to add the United States back in as a party. [Dkt. 136] While the Court denied the motion, it did not instruct that the United States could never be a party to this litigation; instead, the ruling was based on judicial economy. Though the Court was clearly aware that

---

[4] See Docket No. 122, dismissing Counts 7 and 8 with prejudice against the individual defendants because the United States is no longer a party. But see Docket No. 134, dismissing Count IV as to the United States with prejudice, a legal impossibility if they are no longer a party before the Court.

Plaintiffs had re-filed these claims against the United States,[5] it did not dismiss them *sua sponte* based on its earlier orders.

The Federal Defendants argue that the First Amended Consolidated Complaint "violate[s] several of this Court's prior orders." [Dkt. 202, pg. 12] While the Court is in the best position to interpret its own orders, Plaintiffs respectfully suggest that the Court's rulings to date have, *first*, held that Plaintiffs voluntarily dismissed the United States as a party, which dismissal is necessarily without prejudice to re-filing and means that any subsequent orders regarding claims could not have affected the United States as a non-party; *second*, denied the Motion to Add Party, but never included language that Plaintiffs could "proceed only against the 'unknown named agents' as party defendants" as Defendants argue; and, *third*, vacated the prior scheduling order under which the Motion to Add Party was denied and invited an amended pleading.

Plaintiffs are left to wonder why the Federal Defendants feel it necessary to overstate their arguments about the cause of delay in this case, overstate the extent of the Court's prior rulings, and completely refuse to participate in discovery in any meaningful way. The only logical conclusion is that agents of the United States, almost certainly within the FBI, were doing exactly what the First Amended Consolidated Complaint says they did – illegally conduct cyber-stalking intimidation attacks and infiltrating the electronic systems of a United States citizen simply because she was a reporter writing stories for a national news organization that were raising concerns about their covert activities and, in some cases exposing their own potential illegal activity.

---

[5] Docket No. 151, fn. 1, which also made the Federal Defendants and their counsel aware of that re-filed case. That case was filed to toll the statute of limitations on the FTCA claims, but was not served and ultimately dismissed without prejudice after the First Amended Consolidated Complaint was filed.

### III.  STATED CLAIMS

Turning to the substance of the Federal Defendants' arguments, Plaintiffs have stated claims against the Federal Defendants[6] in Counts III through VIII.[7] This is not a case where the complaint is merely threadbare recitals of a cause of action's elements supported by mere conclusory statements. To the contrary, the Complaint is full of factual allegations based on detailed forensic evidence alleging conduct on the part of Defendants that fully support Plaintiffs' claims that their Fourth Amendment and civil rights were unlawfully invaded in retaliation for exercising protected First Amendment rights.[8]

**1.  STANDARD OF REVIEW**

**A.  12(b)(1)**

Rule 12(b)(1) allows a party to move to dismiss "for lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A court considering a Rule 12(b)(1) motion must assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting a plaintiff the benefit of all inferences that can be derived from the facts alleged.' *Am. Nat'l Ins. Co.*

---

[6] The Federal Defendants are the United States and the FBI, the only two entities on whose behalf this Motion to Dismiss was filed. Accordingly, this memorandum does not address the claims made against the John Doe defendants.

[7] Plaintiffs recognize that the Court has previously dismissed Count IV, VII and VIII. To avoid waiver, Plaintiffs re-assert these counts, but will not re-argue them in this memorandum except as they apply to the United States.

[8] Including, but not limited to, misusing the following tactics, techniques, and procedures commonly deployed by the U.S. Intelligence Community against foreign intelligence and terrorist targets: remotely installing malware on computers, mobile phones, and networks for command and control of the respective systems; conducting warrantless surveillance against US Citizens by deliberately diverting Internet traffic from the United States to locations overseas for collection (circumventing FISA in favor of using EO 12,333 authorities; a/k/a "BGP hijacking", "traffic shaping", or "network shaping"); and, unmasking the names of US Citizens in signals intelligence ("SIGINT") for political instead of national security purposes.

8

*v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

### B. 12(b)(6)

Under Fed. R. Civ. P. 12 (b)(6), a complaint should not be dismissed unless it appears certain that plaintiff can prove no set of facts that would support his claim and would entitle him to relief. *Smith v. Sydnor*, 184 F.3d 356, 361 (4th Cir. 1999). The court must accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Smith*, 1184 F.3d at 361. A court is not required to accept legal conclusions drawn from the facts, nor must it accept unwarranted inferences or unreasonable conclusions. *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Factual allegations must be enough to raise a right of relief above a speculative level, on the assumption that all of the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 2. ANALYSIS AND ARGUMENT

#### A. THE FBI IS PROPERLY NAMED AS A DEFENDANT

In the First Amended Consolidated Complaint, Plaintiffs named the FBI as a party defendant based on their own investigation and what minimal discovery the Government has provided. While the Plaintiffs would have liked to be more specific – i.e., naming the particular agents involved in the intrusions and cyber-stalking – their attempts to get discovery into these matters has been stonewalled at every turn. It is unreasonable to expect that a private citizen could do more than Plaintiffs have done, and make factual allegations more detailed than those in Paragraphs 75-84.

Accordingly, Plaintiffs named the FBI itself, as the FBI is unquestionably an "agent" of the United States. The Federal Defendants make some noise about how an agent must be "a

9

person" [Dkt. 202, pg. 14], before falling back on an argument that the FBI simply cannot be sued in its own name. To support this argument, the Federal Defendants rely on language in *Blackmar v. Guerre*, 342 U.S. 512 (1952) without mentioning that its holding has been repeatedly called into question following statutory amendments to the Administrative Procedures Act that were passed specifically to allow federal agencies to be sued in their own name. *Blassingame v. Secretary of the Navy*, 811 F.2d 65 (2nd Cir. 1987). Since 1952, and despite multiple opportunities to do so, the Fourth Circuit has never held that the Federal Bureau of Investigation may not be sued in its own name. *See, e.g.*, *Neely v. FBI*, 208 F.3d 461 (4th Cir. 2000); *Reinbold v. Evers*, 187 F.3d 348 (4th Cir. 1999). As a simple Lexis search reveals, the FBI has been the subject of hundreds of suits in the Fourth Circuit alone, and Plaintiffs can identify no court in this circuit which has dismissed a case on the basis that the FBI cannot be made a party defendant.

### B. THE ELECTRONIC COMMUNICATION PRIVACY ACT CLAIM

While Defendants are correct that Count I (violation of the ECPA) does not lie against the United States, it <u>does</u> lie against the Verizon Defendants. *Burkhart v. Saxbe*, 397 F. Supp. 499, 501 (E.D. Pa. 1975); *see also Smith v. Nixon*, 606 F.2d 1183 (D.C. Cir., 1979). As that discussion is covered extensively in Plaintiffs' memorandum in opposition to the Verizon Defendants' Motion to Dismiss, it is not be further discussed herein.

### C. THE STORED COMMUNICATIONS ACT CLAIM

As noted above, the Court's November 1, 2017, Order [Dkt. 134] dismissed Plaintiffs' claims under the Stored Communications Act "with prejudice" against all defendants, including the United States. Plaintiffs respectfully suggest that because the Court had already ruled that the United States had been voluntarily dismissed and was no longer a party, the Court could not make

such a ruling. Accordingly, Plaintiffs contend that the SCA claim remains viable as against the United States. Such a finding would comport with the language of 18 U.S.C. § 2712:

> Any person who is aggrieved by any willful violation of this chapter [18 U.S.C. §§ 2701 *et seq.*]…may commence an action in United States District Court against the United States to recover money damages.

The statute goes on to describe the means by which such suit is instituted:

> Any action against the United States under this section may be commenced only after a claim is presented to the appropriate department or agency under the procedures of the Federal Tort Claims Act…

*Id.*; *see also Jewel v. NSA*, 965 F. Supp. 2d 1090, 1108 (N.D. Cal. 2013) ("Accordingly, the Court finds that Section 2712 waives sovereign immunity for Plaintiffs' claims for damages under the Wiretap Act and the SCA.")

### D. COMPUTER FRAUD AND ABUSE ACT CLAIM

18 U.S.C. § 1030(g), the Computer Fraud and Abuse Act ("CFAA"), provides that:

> [a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.

The language of the statute, which subjects <u>any</u> "violator" to a civil action, stands in sharp contrast to the language of the ECPA:

> … any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, **other than the United States**, which engaged in that violation such relief as may be appropriate.(emphasis added)

18 U.S.C. § 2520.

In adopting 18 U.S.C. § 1030, Congress elected <u>not</u> to exclude the United States from the class of potential defendants. In so doing, it waived sovereign immunity and chose to subject the United States to liability. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.")

While it is true that Plaintiffs did not allege by subsection exactly which of the five subsections of 18 U.S.C. § 1030 Defendants violated, that omission is not grounds for dismissal. This is particularly true where the substantive factual allegations clearly support violations of § 1030(a)(4) and (5), and the balance could not possibly be applicable.[9] Thus, there can be no plausible argument that the Federal Defendants lack notice of the nature of the CFAA claim.

### E. FOREIGN INTELLIGENCE SURVEILLANCE ACT CLAIM

The same analysis applies for violations of the Foreign Intelligence Surveillance Act ("FISA") as it did for Plaintiffs' claims under the SCA. 18 U.S.C. § 2712 specifically identifies section "405(a) of the Foreign Intelligence Surveillance Act of 1978" as a basis for liability under the SCA and provides that it is similarly subject to the FTCA. This necessarily means that transgression of the substantive provisions of FISA does give rise to a cause of action against the United States via its incorporation by reference into the SCA, 18 U.S.C. § 2712. And as with the SCA analysis, it seems particularly difficult for the United States to claim a lack of waiver of sovereign immunity when § 2712 specifically provides for civil actions against the United States and incorporates the procedures of the FTCA.

---

[9] For instance, 1030(a)(1) criminalizes obtaining information of "national defense or foreign relations", (a)(2) "information contained in a financial record of a financial institution," and (a)(3) "access [to] any nonpublic computer of a department or agency of the United States."

The Federal Defendants tacitly acknowledge this fact, but claim that Plaintiffs' only made a claim under 50 U.S.C. §1810. 50 U.S.C. §1806, which all parties agree waives sovereign immunity by incorporation into 18 U.S.C. §2712, does not contain a private right of action. The only such defined private right within the Electronic Surveillance subsection (18 U.S.C. §§1801-1813) appears in 18 U.S.C. §1810, which provides a cause of action for anyone "[1] who has been subjected to an electronic surveillance or [2] about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 109." That is, those who have been the subject of surveillance or have had information used in violation of the criminal provisions in 18 U.S.C. §1809. Perhaps by no surprise, it is 18 U.S.C. §1806 which identifies how one may obtain or use information obtained by electronic surveillance legally, and it is violations of those provisions for which sovereign immunity has been waived.

There can be no reasonable argument that the First Amended Consolidated Complaint does not contain allegations that "[i]nformation acquired from an electronic surveillance … concerning" Plaintiffs, who are United States citizens, was "used and disclosed by Federal officers and employees without the consent of the" Plaintiffs. *See, e.g.* Paragraphs 48, 51, 58-59, 66, 85. Accordingly, Plaintiffs have identified numerous violations of 18 U.S.C. §1806, for which sovereign immunity is waived by 18 U.S.C. § 2712 and which are made actionable by 18 U.S.C. §1810.

### F. STATE LAW TORTS

The Federal Defendants do not address the Plaintiffs' state law tort claims under the Virginia Computer Crimes Act and common law trespass, apparently relying entirely on their argument that Plaintiffs did not have leave to amend to state claims against the United States. As

Plaintiffs have previously identified, such claims are properly brought against the United States and the FBI, and sovereign immunity waived under the Federal Tort Claims Act.

## **CONCLUSION**

For the reasons stated above, the Defendants' motion to dismiss should be denied and this case should be permitted to proceed, finally, into a resolution of its merits.

Respectfully Submitted,

SHARYL THOMPSON ATTKISSON
JAMES HOWARD ATTKISSON
SARAH JUDITH STARR ATTKISSON
By Counsel

/s/ David W. Thomas
J. Gregory Webb, Esq. (VA Bar No. 38157)
David W. Thomas, Esq. (VA Bar No. 73700)
E. Kyle McNew, Esq. (VA Bar No. 73210)
MichieHamlett PLLC
500 Court Square, Suite 300
Post Office Box 298
Charlottesville, VA 22902-0298
Tel. 434-951-7200
Fax: 434-951-7218
dthomas@michiehamlett.com
gwebb@michiehamlett.com
kmcnew@michiehamlett.com

C. Tab Turner, Esq. (admitted *pro hac vice*)
TURNER & ASSOCIATES, P.A.
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277
tab@tturner.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 23, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to the following counsel of record:

Andrew Han, Esq.
Dennis Carl Barghaan, Jr., Esq.
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: 703-299-3970
Fax: 703-299-3983
andrew.han@usdoj.gov
dennis.barghaan@usdoj.gov
lauren.wetzler@usdoj.gov
*Counsel for Federal Defendants*

Kenneth M. Fetterman (Va. Bar No. 41436)
Reid M. Figel (admitted *pro hac vice*)
Kylie Chiseul Kim (admitted *pro hac vice*)
Albert Pak (admitted *pro hac vice*)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
Phone: (202) 326-7900
Fax: (202) 326-7999
kfetterman@kellogghansen.com
rfigel@kellogghansen.com
kkim@kellogghansen.com
apak@kellogghansen.com
*Counsel for Defendants Verizon Virginia LLC, Cellco Partnership d/b/a Verizon Wireless, and MCI Communications Services, Inc. d/b/a Verizon Business Services*

/s/   David W. Thomas
J. Gregory Webb, Esq. (VA Bar No. 38157)
David W. Thomas, Esq. (VA Bar No. 73700)
E. Kyle McNew, Esq. (VA Bar No. 73210)
MichieHamlett PLLC
500 Court Square, Suite 300
Post Office Box 298
Charlottesville, VA 22902-0298
(434) 951-7200; (434) 951-7218 (Facsimile)
dthomas@michiehamlett.com
gwebb@michiehamlett.com
kmcnew@michiehamlett.com